**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FOOD EMPLOYERS COUNCIL, INC., and Retail Clerks Union, Local 770, Respondents.**

No. 22376.

United States Court of Appeals Ninth Circuit.

July 29, 1968.

Ian Lanoff, Atty., N. L. R. B., Washington, D. C. (argued), Frank H. Itkin, Washington, D. C., Paul A. Cassady, Director, N. L. R. B., Los Angeles, Cal., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Assoc. Gen. Counsel, Washington, D. C., for appellant.

Kenneth Schwartz (argued), of Arnold, Smith & Schwartz, McLaughlin & McLaughlin, Bodle & Fogel, Kessler & Draslin, Los Angeles, Cal., for appellees.

Before CHAMBERS, BARNES and CARTER, Circuit Judges.

BARNES, Circuit Judge:

The National Labor Relations Board petitions, pursuant to section 10(e) of the National Labor Relations Act, 29 U. S.C. § 160(e) (1964), for enforcement against the respondents, the Food Employers Council, Inc., and the Retail Clerks Union, Local 770, of an order issued on March 15, 1967. The Board's decision and order are reported at 163 N. L. R. B. No. 58. The Food Employers Council has filed with this court a waiver of its right to submit oral and written argument, and active opposition to enforcement of the order is undertaken only by the Retail Clerks Union.

At issue is the Board's finding that the respondents committed unfair labor practices when they sought to apply the terms of their collective bargaining agreement to certain employees of the Food Employers Council's members. The Council is comprised of several employers who operate retail food markets in Southern California. For many years the organization has on behalf of its members negotiated master collective bargaining agreements with various labor organizations; such a contract is the one here in question, made effective by respondents for a five-year term on April 1, 1964. The Board found that by attempting to apply its provisions —one of which was a union-security clause—to snack bar employees of the Council's members at a time when the Retail Clerks did not represent a majority of such employees, the Council violated section 8(a) (1), (2), and (3) of the Act, 29 U.S.C. § 158(a) (1), (2), (3) (1964), and the union section 8(b) (1) (A) and (2), 29 U.S.C. § 158(b) (1) (A), (2) (1964).

The evidence is basically undisputed, and both parties agree that the only question before us concerns the propriety of the Board's conclusion that the snack bar employees in question "were not an accretion to the existing unit but instead constituted a separate and distinct operation," and that consequently those employees should be afforded the opportunity to determine for themselves whether they want to be represented by a bargaining agent and, if so, to choose that agent, rather than have such determinations made for them by the Council and the Retail Clerks.

The question of whether a group of employees represents an "accretion" to an existing unit, so that the group is governed by the larger unit's choice of bargaining representatives, is similar to the issue of a particular unit's "appropriateness" for purposes of bargaining. See section 9 of the Act, 29 U.S.C. § 159 (1964); Local 620, Allied Industrial Workers of America, AFL–CIO v. NLRB, 375 F.2d 707, 710–711 (6th Cir. 1967). The general outlines of the accretion issue are fairly set out in the Board's brief:

> "An 'accretion' is, by definition, merely the addition of new employees to an already existing group. When the new employees are added and comingled (sic) with existing employees

so as to lose their separate identity, their inclusion in an existing unit follows as a matter of course. Questions arise only when the new group remains identifiable, for example, as when they constitute a separate department or store or plant. In these situations * * * the Board will examine the entire picture before permitting the new employees to be swallowed up by the bargaining representative of the employer's other employees without expressing their wishes in the matter. When such inclusion is permitted, on the basis of criteria developed by the Board and approved by the courts * * *, the new group is an 'accretion' to the old group." Brief for Petitioner at 10–11 n. 10.

The trial examiner's findings relating to this issue—findings supported by substantial evidence and adopted by the Board—are as follows:

"The seven employer members of Respondent Council involved in these proceedings operate retail food markets in Southern California and at all times material herein have been parties to a contract, entered into on their behalf by Respondent Council with Respondent Clerks, effective for a five year term from April 1, 1964 through March 31, 1969. This contract covers retail clerks who are engaged in food, bakery, candy and general merchandise operations and supersedes an earlier agreement between the same parties which ran from January 1, 1959 through March 31, 1964. At the time the earlier agreement was executed, no snack bars were in existence but during its term some of the employers who were parties to the agreement established such bars. However, the employees of these snack bars were not represented by Respondent Clerks. The contract of April 1, 1964, for the first time included snack bar employees in the unit, together with other categories of employees.

"At the time the present contract was executed, Respondent Clerks did not represent a majority of the snack bar employees, as distinguished from the overall group of employees covered. However, the Joint Board [Los Angeles Joint Executive Board of Hotel and Restaurant Employees and Bartenders Unions, AFL–CIO] or Local 694 [Hotel, Motel, Restaurant Employees and Bartenders Unions, Local 694, AFL–CIO] did then and presently does represent snack bar employees of some, but not all, of the employer members of the Respondent Council who are parties to the April 1, 1964 contract. The existing agreement expressly excludes culinary employees who are represented by the Joint Board or Local 694.[4] The General Counsel and the

"4. The contract also expressly excludes from its coverage meat department employees and janitorial and maintenance personnel, both of which groups are represented by other unions.

Charging Parties contend that the snack bars constitute a distinct and separate operation and that the snack bar employees were entitled to determine for themselves in an election whether they wish to be included in the over-all unit. The Respondents, on the other hand, assert that the employees of the snack bars constitute an accretion to the pre-existing unit and were therefore properly covered by the terms of the April 1, 1964 agreement.

"The parties stipulated that the snack bars involved in these proceedings prepare food which in some cases is consumed at counters or tables on the premises of the retail market in which the snack bar is located and on other occasions is consumed elsewhere; that the snack bars are located outside of the area of the check stands in the markets; that all purchases made at the snack bars are paid for at the snack bar registers; that there are no other employees in the stores or markets who perform the type of work done at the snack bars, although in emergencies clerks, clerks' helpers or box boys will relieve snack bar employees; that there is no interchange of employees

between the snack bar and other departments of the stores, although on occasion snack bar employees have moved to other jobs within the stores; and that there is a department manager who has authority over the snack bars and who is responsible in turn to the store manager.

"An examination of the provisions of the existing contract shows that the hours, wages and working conditions of snack bar employees are different from those of the other employees. Thus, split shifts are permitted for snack bar employees but prohibited for all other employees. A guarantee of 8 hours work at a Sunday premium rate of pay which is applicable to all retail clerks, except part-time clerks' helpers, is not applicable to snack bar employees. Employees of snack bars which operate as such exclusively receive the same wages as those accorded clerks' helpers but the present agreement provides that future wage increases shall either be the same as those negotiated for clerks' helpers 'or those negotiated by the hotel and restaurant industry, whichever are greater'. Snack bar employees are entitled to meals while other employees are not." C.T. 31–32 (footnote omitted).

On these facts the examiner and the Board concluded that

"the terms and conditions of employment of snack bar employees are different from those of the retail clerks[,] that they have a community of interest apart from them," C.T. 32,

and that the snack bar employees could not be regarded as an accretion to the existing unit.

 The Board's discretion in drawing the boundaries of "appropriate units" for purposes of bargaining is extremely broad. E. g., Foreman & Clark, Inc. v. NLRB, 215 F.2d 396, 405–406 (9th Cir.), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954); NLRB v. Schill Steel Prods., Inc., 340 F.2d 568, 573–574 (5th Cir. 1965). We do not endorse all that may be read into the

suggestion made in Local 620, Allied Industrial Workers of America, AFL–CIO v. NLRB, 375 F.2d 707, 711 (6th Cir. 1967), that, since "[h]ere the question [is] whether the boundaries of a valid bargaining unit could be contractually extended by an employer and union to cover employees * * * who never indicated their support of that union," the fact "[t]hat this is not a representation case does not change the role of the Board." As the Seventh Circuit pointed out in NLRB v. Appleton Elec. Co., 296 F.2d 202, 206 (7th Cir. 1961),

"The Board argues this case as though it were a representation case designed to determine prospective rights and obligations, but the issue before us is to determine the lawfulness or unlawfulness of [the respondents'] past conduct."

Nevertheless, the Board's discretion in gauging the proper scope of bargaining units does not completely disappear in cases such as this. In determining whether a group of employees represents an accretion to an existing unit the Board must consider unique and complex sets of facts in light of the somewhat conflicting policies of stability in bargaining relations, see NLRB v. Appleton Elec. Co., supra, and assurance to employees of the right to choose their own bargaining agents, see NLRB v. Masters-Lake Success, Inc., 287 F.2d 35, 36 (2d Cir. 1961).

 It is true that in certain similar factual situations the Board has preferred larger units of the sort contended for here by the union. The Great Atlantic & Pacific Tea Co., 140 N.L.R.B. 1011 (1963); Safeway Stores, Inc., 137 N.L.R.B. 1741 (1962); cf. Priced-Less Discount Foods, Inc., d/b/a Payless, 157 N.L.R.B. 1143 (1966). See also NLRB v. Appleton Elec. Co., 296 F.2d 202 (7th Cir. 1961). In others, however—including cases involving members of the Council—the Board has found more narrowly drawn units to be more appropriate. Piggly Wiggly California Co., 144 N.L.R.B. 708 (1963); cf. The Boy's Market, Inc., 156 N.L.R.B. 105 (1965), enforced

sub nom. Retail Clerks Union, Local 770 v. NLRB, 370 F.2d 205 (9th Cir. 1966). It is not clear that in deciding such cases the Board has been entirely consistent, see Melody Music, Inc. v. FCC, 120 U.S. App.D.C. 241, 345 F.2d 730 (1965); cf. NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965), or that it has not in this case approached the bounds of its discretion. There is in the record considerable evidence that snack bar employees do share a certain "community of interest" with the employees represented by the respondent union. We believe, however, that such evidence, when weighed against that supporting the Board's conclusion (set out, supra), is insufficient to render that conclusion an abuse of discretion.[1] See NLRB v. Masters-Lake Success, Inc., 287 F.2d 35 (2d Cir. 1961); cf. Local 620, Allied Industrial Workers of America, AFL–CIO v. NLRB, 375 F.2d 707 (6th Cir. 1967).

It would nonetheless be helpful to reviewing Courts of Appeals if future Board decisions of this sort would more carefully analyze the competing considerations involved, including the claims of previous decisions for some precedential value. It is true that "[w]hether or not a particular operation constitutes an accretion or a separate unit turns, of course, on the entire congeries of facts in each case." The Great Atlantic & Pacific Tea Co., 140 N.L.R.B. 1011, 1021 (1963). That truth does not, however, preclude the need for rational and reasonably consistent assessments of such factual situations.

We conclude that the Board's order should be, and it is, ordered to be enforced.

1. As we suggested earlier, it is not irrelevant that in this case "the issue before us is to determine the lawfulness or unlawfulness of [the respondents'] past conduct," and not merely "to determine prospective rights and obligations." NLRB v. Appleton Elec. Co., 296 F.2d 202, 206 (7th Cir. 1961). In situations in which complex and difficult factual determinations are necessary, however, it would seem advisable—and not unduly burdensome—for unions such as the respondent here to resolve close questions concerning the extension of bargaining agreements in favor of proselytizing the employees in question rather than seeking to represent them through the *fait accompli* of accretion. We frown upon the "successful coup" technique. Cf. Retail Clerks Union, Local 770 v. NLRB, 370 F.2d 205, 208 (9th Cir. 1966).