**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUNSET HOUSE and Local 399, Building Service Employees' International Union, AFL–CIO, Respondents.**

No. 22967.

United States Court of Appeals Ninth Circuit.

Sept. 8, 1969.

Allen H. Sachsel (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., Washington, D. C., Roy O. Hoffman, NLRB, San Francisco, Cal., for petitioner.

Harry R. Stang (argued), of Tyre & Kamins, Beverly Hills, Cal., Levy, DeRoy, Geffner & Van Bourg, Los Angeles, Cal., Carroll, Davis, Burdick & McDonough, San Francisco, Cal., for respondents.

Before BROWNING and HUFSTEDLER, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

This case arises upon the petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), for enforcement of its order. In agreement with the Trial Examiner, the Board found that Sunset House and the Building Service Employees' International Union, Local 399, violated respectively Sections 8(a) (1), (2) and (3) and 8(b) (1) (A) and (2) of the Act, 29 U.S.C.

* Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

§ 158(a) (1), (2) and (3) and 29 U.S.C. § 158(b) (1) (A) and (2). These sections make it an unfair labor practice for an employer or labor organization to interfere with or coerce employees in the exercise of their right to self-organization and to choose their own bargaining representatives. The Board and Trial Examiner found these violations in the attempt of the employer and union to apply their collective bargaining contract, including the union security provisions, to Sunset's new store in San Francisco, without approval of the San Francisco employees. This denied the employees at the new store the right to choose their own bargaining representative.

Sunset House conducts a mail order business from its principal office in Los Angeles. Ninety-two percent of its revenue comes from mail order sales. Sunset House also operates fourteen retail stores, thirteen of which are in the Los Angeles and San Diego area. The respondent union was certified as the official bargaining representative for the employees in the mail order operation and in the eleven stores then in existence in May, 1966. The union and the employer reached a collective bargaining agreement which requires that old employees remain members of the union and that new employees join the union after 30 days, as a condition of employment. This contract was made applicable to all stores then in existence and to all to be opened in the future.

Subsequent to the formation of this bargaining contract, Sunset opened its new store in San Francisco, its only store outside the Los Angeles-San Diego area. Sunset operates all of the stores as an integrated chain, centrally managed at the main Los Angeles office, and with a minimum of local independent control. Store layout, merchandising, and advertising are coordinated with Sunset's mail order business. Every time the company sends out a new catalog, each store's merchandise displays are completely revised to match the pictures in the catalog. Prices are the same in all of the stores. Banking and insurance coverage is also the same for all stores. The main office determines inventory levels for each store. There is centralized control over labor relations, with the central office formulating uniform personnel policies. Yet, contrary to the contention of the company, the Trial Examiner found that the local store manager in San Francisco has the power to hire new employees, subject at most to ratification by the main office. There are uniform employment applications and employee training procedures. Wages, hours, and working conditions are identical throughout the system. Although given the opportunity, there has been no interchange of employees between the San Francisco and other stores.

Before the Board, the company argued that the standard store design and operation, the history of multi-store bargaining, and the certification of the Los Angeles-San Diego unit required a finding that the new store employees were an "accretion" to the existing bargaining unit. An "accretion" occurs when new employees are added to an already existing unit. "The question of whether a group of employees represents an 'accretion' to an existing unit, so that the group is governed by the larger unit's choice of bargaining representatives, is similar to the issue of a particular unit's 'appropriateness' for purposes of bargaining." N.L.R.B. v. Food Employers Council, Inc., 399 F.2d 501, 502 (CA 9, 1968). On the basis of the great geographical distance between the San Francisco store and the other stores, the lack of any employee interchange, and the local manager's hiring and firing power, the Trial Examiner and Board rejected the contention that the new employees were an accretion to the old bargaining unit.

The Trial Examiner and Board reasoned that employees are usually allowed to select their own bargaining representatives and that the accretion doctrine should be applied restrictively as it offends this basic empoyee right. The San Francisco store is 350 miles from the nearest store, 375–385 miles from the

main Los Angeles office. The relatively low pay of the employees means that it will be difficult for the San Francisco employees to participate in union activities in Los Angeles. The company argues that the distance is not a crucial factor because the total travel time from the main Los Angeles office to the San Francisco store is only 15 minutes greater than the time from the main office to the San Diego store. But, the real issue here is not travel time: it is the effect of the great distance on the employees' ability to participate in union affairs. It would be much more difficult and expensive for an employee from San Francisco to go to union meetings in Los Angeles than it would be for an employee from San Diego. That there has been no interchange of employees with the San Francisco store tends to support this conclusion. The Board concluded that there was a lack of sufficient community of interest between the 7–10 San Francisco employees and the over 400 Los Angeles-San Diego employees and ordered the company and union to cease applying their collective bargaining contract to the new store until the union is certified as the bargaining representative of the employees at the new store.

 Sunset House[1] objects to enforcement of the Board's order, urging that the Board abused its discretion in determining that the appropriate bargaining unit did not include the new store. The Board's discretion is extremely broad. N.L.R.B. v. Food Employers Council, Inc., *supra* at 504. "A unit is not a flexible thing, as broad or narrow as an employer and union care to make it. It is for the Board to decide, once the scope of a bargaining unit is called into question, whether or not such unit is appropriate for the purposes of collective bargaining." Local 620, Allied Industrial Workers of America v. N.L.R.B., 375 F.2d 707, 710 (CA 6, 1967). Considering the narrow scope of review, we are unable to say that the Board abused its discretion in making its de-

cision. This is particularly true where the Board has resolved a close question in favor of permitting the affected employees to choose for themselves their bargaining representatives. N.L.R.B. v. Food Employers Council, Inc., *supra* 399 F.2d at 505 n. 1. In reaching its conclusion, the Board properly weighed the relevant factors—functional integration of the business, centralized control of management, similarity of working conditions, collective bargaining history, local power to hire and fire, lack of employee interchange, geographical distance. See Barr's Jewelers, 131 N.L.R.B. 235 (1961); Welch Scientific Co. v. N.L.R.B., 340 F.2d 199 (CA 2, 1965); Local 620, Allied Industrial Workers of America v. N.L.R.B., *supra*. We hold that there is substantial evidence in the record to support the decision of the Board.

Sunset relies upon three prior Labor Board decisions where the Board determined that the larger group was the appropriate bargaining unit. In Lane Drug Co., 160 N.L.R.B. 1147 (1966), the Board held that all the pharmacists in the employer's 17 stores in and around Toledo constituted the proper bargaining unit. The Board based its decision on the centralized managerial and administrative control over the drugstores, the unified payroll system, the centralized merchandise distribution, systematic pharmacist interchange between stores, and the geographical proximity of the stores. In Meijer Supermarkets, Inc., 142 N.L.R.B. 513 (1963), the Board found that all of the company's retail stores selling food and non-food items in Grand Rapids and its environs constituted the appropriate unit. The Board held that two new stores which had a different format and emphasized the sale of non-food items and an old store which was changed to be like the two new ones, were an accretion to the existing bargaining unit. The Board reasoned that the centralized control over pricing, inventory, personnel administration, the

1. The union has made no appearance in proceedings before the Board or in this court.

interchange of both merchandise and personnel between all of the stores, and the geographic integration, indicated that the proper bargaining unit consisted of all the stores. Similarly, in Home Exterminating Co., 160 N.L.R.B. 1480 (1966), the Board found the appropriate bargaining unit to consist of the employer's home and branch offices in the State of Maryland. The Board found that the central office determined all of the policies regarding wages, hours, and working conditions and bought all of the supplies for all of the branches. Although the branch offices varied from 27 to 110 miles away from the home office in Baltimore, there was considerable temporary interchange of employees between offices.

These cases are clearly distinguishable from the instant case. In *Lane* and *Meijer*, all the stores were in one city and the immediately surrounding area; in *Home* the branch offices ranged up to 110 miles away from the main office, not nearly as far away as the San Francisco store is from the main Los Angeles office. Moreover, in all three cases there was continual employee interchange between offices, indicating that all of the employees could participate without difficulty in union activities. In determining an appropriate bargaining unit, the Board considers two aspects of the problem. It must weigh the factors which indicate a centralized management and integrated functioning of the business with the factors which indicate that the employees do not share a community of interest. When one store is so far removed from the rest of the unit that union participation would be difficult or impractical, then a separate unit is appropriate. See Local 620, Allied Industrial Workers of America v. N.L.R.B., *supra*; Welch Scientific Co. v. N.L.R.B., *supra*.

Sunset also argues that two Court of Appeals cases require that the Board order should not be enforced. In N.L.R.B. v. Frisch's Big Boy Ill-Mar, Inc., 356 F.2d 895 (CA 7, 1966), the court refused to enforce a Board order determining that one restaurant, of a chain of 11 restaurants formed as separate corporations but operated as a chain with common owners and officers, was an appropriate bargaining unit. Ten of the 11 stores were located in one city; the remaining one being 60 miles away was agreed, by the parties, to constitute a separate bargaining unit. The court held that the identical terms and conditions of employment at all of the restaurants, the control over employee relations by the common officers, and the common geographical area of the ten restaurants required that the bargaining unit should consist of all ten restaurants. In N.L.R.B. v. Purity Food Stores, Inc., 376 F.2d 497 (CA 1, 1967), the court held that a Board determination that one store of a seven store supermarket chain was an appropriate bargaining unit was improper and would create chaos and friction due to the disruptive effects of piecemeal unionization. The court noted that all the stores were within a 30 mile radius, that there was central control over purchasing, hiring, firing, training, terms and conditions of employment, and that there was much interchange of employees both temporary and permanent.

There were no factors in either of these cases which indicate that the employees would have difficulty participating in union affairs. Unlike the instant case, the employees all worked in the same geographical area, easily interchanging positions. Consequently, these two cases do not support Sunset's argument.

The petition for enforcement is granted.