**CULINARY WORKERS AND BARTENDERS UNION, LOCAL 814, an unincorporated association, Plaintiff,**

**v.**

**John V. SALATICH, individually and doing business as the Gas Lite, a sole proprietorship, Captain's Wharf, a corporation, John V. Salatich, John L. Salatich and Betty R. Salatich, as officers and directors of Captain's Wharf, a corporation, Defendants.**

Civ. A. No. 70–1102.

United States District Court,
C. D. California.

Sept. 23, 1970.

Lionel Richman, Richman & Garrett, Los Angeles, Cal., for Culinary Workers and Bartenders Union, Local 814.

Willard Z. Carr, Jr., Kenneth W. Anderson, Los Angeles, Cal., for John V. Salatich, John L. Salatich, Betty R. Salatich and Captain's Wharf, Gibson, Dunn & Crutcher, Los Angeles, Cal., of counsel.

## DECISION AND ORDER FOR DISMISSAL

HAUK, District Judge.

Plaintiff filed a Complaint in this Court alleging that the defendants were in violation of the terms of a collective bargaining agreement by refusing to recognize the applicability of such agreement to them. Plaintiff sought damages in the amount of the initiation fees and dues lost because of the alleged failure of the defendants to observe the collective bargaining agreement and for a declaration that the defendant Captain's Wharf and its employees were bound by all the terms and conditions of the collective bargaining agreement.

The jurisdiction of the Court was asserted pursuant to Section 301 of the Labor Management Relations Act.[1]

The Complaint alleged that on or about October 23, 1968, the plaintiff and defendant, John V. Salatich, then doing business as the sole proprietor of a cocktail lounge known as The Gas Lite, entered into a collective bargaining agreement. Article I, section 2 of that agreement provided:

"This agreement applies to and covers the employees in any other establishments within the jurisdiction of the union which the Employer may own or operate during the term of this agreement. The term 'Employer' shall also be deemed to include any person, firm, partnership, corporation, joint venture or other legal entity which is now, or during the term of this agreement or any extensions thereof, may be substantially in control of, or substantially controlled by such signatory Employer."

The Complaint further alleged that on or about May 21, 1969 the defendant, John V. Salatich, together with his son, John L. Salatich, and his wife, Betty R. Salatich, established a corporation known as the Captain's Wharf to engage in the restaurant and tavern business. According to the Union allegations, the Captain's Wharf has been and is now substantially controlled by John V. Salatich. During the early part of 1970, the plaintiff made a demand upon the defendants to apply The Gas Lite collective bargaining agreement to the employees at the Captain's Wharf. The defendants, however, refused and their refusal precipitated the suit.

The collective bargaining agreement in question contained a standard union security clause, requiring employees to become members of the union on the 31st day after beginning employment. It also provided for the discharge of employees if they failed to pay their union dues and required the employer to pay 13¢ per hour worked by each employee to a Union Welfare Fund.

The defendants moved to dismiss, asserting that N.L.R.B. had exclusive jurisdiction over this matter, that the plaintiff failed to avail itself of the arbitration clause of this contract, that there had been a failure to join indispensable parties, namely the employees of the Captain's Wharf, and that such a clause as Article I, § 2 was unlawful according to decisions by the Board and courts under the National Labor Relations Act.[2] The motion was accompanied by affidavits which alleged that The Gas Lite was a cocktail lounge doing business in Santa Monica, California and employing never more than four employees. It was further alleged that the sole owner, John V. Salatich, had put the business up for sale prior to the opening of the Captain's Wharf and in fact had sold it at about the time of institution of this suit. The Captain's Wharf was alleged to be a restaurant in Marina Del Rey, California, employing 25 people at its opening in January, 1970 and presently employing 35 employees. The affidavits alleged that only two employees transferred from The Gas Lite to the Captain's Wharf and that the son, John L. Salatich (not John V. Salatich) is the individual who is managing the operations of the Cap-

1. 29 U.S.C. § 185.

2. 29 U.S.C. § 141 et seq.

tain's Wharf. There were no allegations that any of the employees of the Captain's Wharf, let alone a majority, desired to be represented by the plaintiff union.

The Court has examined the entire record which includes, among other things, plaintiff's Complaint, Memoranda of Points and Authorities in support of and in opposition to a Motion to Dismiss, and Affidavits submitted by both plaintiff and defendants. The Court has reviewed all this material and concludes that defendants are entitled to have their Motion to Dismiss sustained on two grounds:

## DECISION

*The Complaint Fails To Allege Facts From Which The Court Could Conclude That Defendants Were Lawfully Bound By The Terms Of The Collective Bargaining Agreement*

Sections 7 and 8 of the National Labor Relations Act provide as follows:

"Employees shall have the right * * * to bargain collectively through representatives of their own choosing * * * " 29 U.S.C. § 157 "It shall be an unfair labor practice for an employer (1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 157 * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." 29 U.S.C. § 158.

The defendants contend that should the Court grant the relief requested by the plaintiff, the freedom of choice guaranteed by these sections of the N.L.R.A. to the employees of the Captain's Wharf would be denied.

The usual manner in which an employer becomes bound to recognize a labor organization as the representative of its employees is for the Union to prove to the employer that a majority of the employees desire the Union to act for them. There are two basic ways this

can be accomplished by the Union—certification by the N.L.R.B. or proof by such means as union authorization cards signed by a majority of employees. See N.L.R.B. v. Gissel Packing Co. (1969), 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547. However, there are no allegations in the Union complaint that either of these predicates for Union representation have been satisfied. Thus, unless there is some other doctrine which is applicable, there would be no basis on which the Court could uphold the Union's claims.

The Union has contended in its Complaint that it is entitled to represent the employees of the Captain's Wharf by the mere fact that the clause in the collective bargaining agreement with The Gas Lite contractually obligates the defendants to apply it to the Captain's Wharf. That clause, in brief, states that The Gas Lite agreement covers any future establishment which is substantially controlled by the signer of The Gas Lite agreement, namely John V. Salatich. However, such a clause cannot by itself authorize a result which would have the effect of compelling the employees of the Captain's Wharf to choose between becoming members of the Union or be discharged from employment.

Such a result would be lawful only if the doctrine of "accretion" as developed by the N.L.R.B. would be applicable. Accretion involves the addition of one group of employees to an already existing group. The accreted employees have no choice over whether they want to be included in the existing unit. Because the doctrine of accretion potentially conflicts with section 7 rights of employees, the Board has developed a number of criteria to insure that accretion occurs only in situations where there is sufficiently strong community of interest between the existing unit and the employees to be accreted to justify applying that doctrine. As stated by the Court in Spartans Industries, Inc. v. N.L.R.B. (5 Cir. 1969), 406 F.2d 1002:

"Although the doctrine of accretion has been extended full recognition

within the law, the independence of the employee even in this field has been strongly protected." 406 F.2d 1002, 1005.

Without facts sufficient to justify application of a doctrine of accretion, the cases are clear that there can be no extension of a collective bargaining agreement that applies one unit to a new and separate group of employees. Otherwise the employer and the Union would be guilty of committing unfair labor practices such as coercing employees in the exercise of their section 7 rights in violation of 8(a) (1) and unlawfully encouraging membership in a labor organization in violation of 8(a) (3).

One of the leading National Labor Relations Board cases establishing this principle is Masters-Lake Success, Inc. (1959), 124 N.L.R.B. 580, enf. as mod. 287 F.2d 35. In this case the employer owned four stores which had collective bargaining agreements with two locals of a particular union. In the collective bargaining agreement between the employer and the Union, one of the articles stated:

"This agreement shall apply to the establishment now owned, maintained, operated and/or controlled by the Employer [Masters, Inc.] in the Metropolitan area and/or any new establishment that the Employer may own, maintain, operate and/or control in that area at any time during the term of this agreement." 124 N.L.R.B. 580, 588–589.

There is no important difference between the language of this clause and the one in the instant case. Subsequent to the signing of this clause, the employer opened a new store. Upon demand by the Union to apply all the terms and conditions of the old collective bargaining agreement to the new store, including a union shop clause, the employer acknowledged that the new store would be covered by the existing contract. It was held:

"Although the union-security clause contained in the contract which was applied to the employees at the Lake Success store follows the language of the statute, the proviso to Section 8(a) (3) of the Act prescribes the conditions under which an agreement containing such a clause may be lawful. Thus, the proviso requires, among other things, that *all* of the following requirements be met: (1) The unit covered by the agreement must be an appropriate unit within the meaning of the Act; (2) [unless there is an accretion] the Union must be designated or selected as bargaining representative by a majority of the employees in said appropriate unit *when the agreement is made*; and (3) the Union must be one which has not been established or assisted by any unfair labor practices. Failure to comply with any *one* of the above requirements renders the union-security clause unlawful. For reasons hereinafter indicated, I find that Respondents have failed to comply with any of the above requirements." 124 N.L.R.B. 580, 591.

Subsequently the Second Circuit upheld the Board's decision in this case:

"Thus, during the hiring process and before the Lake Success store was open, the employer accepted the union as the sole and exclusive bargaining agent at the new store. The Board determined that the Lake Success store was a new bargaining unit, rather than an accretion to the downtown store, and held that recognition of the union as exclusive agent before it had a majority of employees resulted in violations of § 8(a) (1), (2), and (3) and § 8(b) (1) (A) and (2) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) (1), (2), and (3) and § 158(b) (1) (A) and (2). 124 N.L.R.B. No. 73. The Board's action in thus permitting a new group of employees at a new store to choose freely a bargaining representative is fully in accord with the policy of § 7 of the Act, 29 U.S.C. § 157, and is a valid exercise of the Board's wide discretion in determining the appropriate bargaining unit.

Accordingly, the Board's order, in so far as it brings to an end the unfair labor practices resulting from application of the agreement to the new store, will be enforced." N.L.R.B. v. Masters-Lake Success, Inc. (2d Cir. 1961), 287 F.2d 35, 36.

See also: Spartan-Atlantic Dept. Stores (1968), 173 N.L.R.B. No. 186, 1968–2 CCH N.L.R.B. ¶ 20,415. enf., 406 F.2d 1002 (5th Cir. 1969).

Chicago Freight Car & Parts Co. (1949), 83 N.L.R.B. 1163.

Other circuits have also held that where there is an application of an existing collective bargaining agreement to a new and additional location, and there has been no selection of the Union by the employees at the new location, there is an unlawful infringement of the right of employees to select their own representatives absent the existence of accretion. In Local 620, Allied Industrial Workers, etc. v. N.L.R.B. (6th Cir. 1967), 375 F.2d 707, the employer transferred 50 per cent of its activities from one facility to a new facility 50 miles away. The new plant had new hires and there was never any claim that a majority of them designated the Union as their bargaining agent. Nonetheless the employer executed a supplemental agreement with the Union which applied many of the terms of the existing bargaining agreement, including a union shop clause, to the new plant. The Court upheld the Board's determination that an unfair labor practice had been committed.

"Here the question was whether the boundaries of a valid bargaining unit could be contractually extended by an employer and union to cover employees at a distant plant who never indicated their support of that union. The Board found that the new facility did not constitute an accretion to the old plant, and that there was not a sufficient community of interest demonstrated between the Adrian workers and the Ypsilanti workers to justify the former being represented, without

their acquiescence, by the same bargaining agent. From the facts detailed in the record before us—the existence of separate administrative units, the geographical distance between the plants, their lack of significant functional integration, the contractual differences governing the two groups of workers, the failure of any substantial interchange of employees to take place, even in the period preceding the lodging of the unfair labor complaint—we are not able to conclude that the Board's findings constituted an abuse of discretion." 375 F. 2d 707, 711.

Whether such a contractual extension occurs before or after the establishment of a new location should, of course, make no difference.

In N.L.R.B. v. Food Employers Council, Inc. (9th Cir. 1968), 399 F.2d 501, the issue was whether the Union and the employers (retail food markets in Southern California) could apply existing agreements which included a union shop clause to snack bar employees at the markets. The Court upheld that Board's determination that snack bar employees were not an accretion to the existing unit and therefore concluded that the existing collective bargaining agreement could not be applied to them. In so holding the Court stated:

"Nevertheless, the Board's discretion in gauging the proper scope of bargaining units does not completely disappear in cases such as this. In determining whether a group of employees represents an accretion to an existing unit the Board must consider unique and complex sets of facts in light of the somewhat conflicting policies and stability in bargaining relations, see N.L.R.B. v. Appleton Elec. Co., supra, and assurance to employees of the right to choose their own bargaining agents, see N.L.R.B. v. Masters-Lake Success, Inc., 287 F.2d 35, 36 (2d Cir. 1961.)" 399 F.2d 501, 504.

In N.L.R.B. v. Sunset House (9th Cir. 1969), 415 F.2d 545, the employer con-

ducted a mail order business from an office in Los Angeles. It had 14 stores, 13 of which were in the Los Angeles and San Diego area. The 14th store was located in San Francisco. Prior to the opening of the San Francisco store, the employer and the Union had executed an agreement which had a union shop clause and was made applicable to all stores then in existence and to all to be opened in the future. Here again the Ninth Circuit emphasized the Board's discretion in determining what is an appropriate unit and held that under the facts of this case it was unlawful to apply an existing contract to a new location even though the existing contract provided for that eventuality.

■ Thus in order for the plaintiff to prevail, it must show that the employees of the Captain's Wharf are an accretion to The Gas Lite unit. However, as the Complaint now stands, it is plainly insufficient in alleging facts relevant to a finding of accretion. The factors which the N.L.R.B. relies upon in the accretion area were set forth in the case of The Great A & P Tea Co. (1963), 140 N.L.R.B. 1011, 1963-1 CCH N.L.R.B. ¶12,051. The factors include the following: (1) Integration of operations, (2) centralization of managerial control, (3) geographic proximity, (4) similarity of working conditions, skills and functions, (5) central control over labor relations, and (6) interchangeability of employees. The Complaint is barren on each of these factors. It should be noted that the defendants' affidavits, assuming they are accurate, would seem to negate any possibility of a finding that an accretion has occurred here. The Gas Lite unit apparently consisted of at most 4 employees, whereas the Captain's Wharf employs 35 employees. It would be against common sense to hold that one unit approximately 9 times the size of another could be considered an accretion to that other unit. See Patterson-Sargent Division of Textron, Inc. (1968), 173 N.L.R.B. No. 203, 1968-2 CCH N.L.R.B. ¶20,417; Pullman Industries, Inc. (1966), 159 N.L.R.B. 580,

1966 CCH N.L.R.B. ¶20,537. Moreover, the affidavits suggest that, there is insufficient geographic proximity, integration of operations, central control over labor relations and interchangeability of employees to justify accretion here. However, for the purposes of this motion, the Court need not reach any factual conclusions. Regardless of the accuracy of the defendants' affidavits, the fact remains that the plaintiff's Complaint is totally lacking in allegations which would enable this Court to find an accretion, and therefore the Court must order its dismissal.

*The Plaintiff Has Failed To Join Indispensable Parties As Required by Rule 12(b) (7) Of The Federal Rules Of Civil Procedure*

Rule 19(a) of the Federal Rules of Civil Procedure, revised in 1966, provides:

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of this action improper, he shall be dismissed from the action." Rule 19, Federal Rules of Civil Procedure.

The 1966 revision substantially changed the wording of Rule 19 but did not effect a change in principles or displace principles developed earlier. Provident Tradesmens Bank & Trust Co. v. Patterson (1968), 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936; 3A Moore's Federal Practice ¶19.07[2], (2d ed. 1969). Thus although the rule now talks of "persons to be joined if feasible", doctrines developed prior to 1966 with respect to determining who are necessary and who are indispensable parties and the effect of their nonjoinder are still applicable. For example, the Supreme Court in Provident Tradesmens Bank & Trust Co. v. Patterson (1968), 390 U.S. 102, 88 S.Ct. 733, stated that the 19th century Shields v. Barrow distinctions were still valid today.

"The most influential of the cases in which this Court considered the question whether to proceed or dismiss in the absence of an interested but not joinable outsider is Shields v. Barrow, 17 How. 130, 15 L.Ed. 158, referred to in the opinion below. There the Court attempted, perhaps unfortunately, to state general definitions of those persons without whom litigation could or could not proceed.

In the former category were placed

"'Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties.'

"The persons in the latter category were

"'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'

"These generalizations are still valid today, and they are consistent with the requirements of Rule 19, * * *." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 123–124, 88 S.Ct. 733, 745–746.

The test of indispensability set forth in the quotation above is essentially the same as that set forth in Rule 19(a) (2) (i), Federal Rules of Civil Procedure. See 3A Moore's Federal Practice ¶19.-07–1[2–1] (2d ed. 1969). That test is whether a party having an interest relating to the subject of the action is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest. That test perfectly fits the situation of the present employees working at the Captain's Wharf. The Captain's Wharf apparently employs 35 employees in categories which would be subject to the collective bargaining agreement if such an agreement is applicable. Article II of that agreement provides that all employees, as a condition of retaining their employment, must join the Union on the thirty-first day after beginning employment. Consequently, the application of the collective bargaining agreement to the Captain's Wharf employee poses but two alternatives for them. They have the option to become members of the Union or to be discharged for failing to comply with Article II of the agreement. In either instance, these employees have an interest which will be crucially affected should the Court rule in plaintiff's favor. As a practical matter, their ability to protect that matter will be impaired or impeded unless they are made parties to this action. With either their jobs or their right of freedom of association riding

on the outcome of this suit, equity and good conscience demand that they be considered persons needed for a just adjudication.

What case authority exists is in accord with this position. In Nix v. Spector Freight System, Inc. (3rd Cir. 1959), 264 F.2d 875, employees of Company B which had absorbed the business of their former employer, Company A, brought suit against Company B and their union. At the time of the absorption of Company A, both Company A and Company B had similar collective bargaining agreements with a particular union. An arbitration was held with respect to the issue of how to handle seniority of the two employers and the result was an alternation of seniority between the employees of both Companies. Some of the employees whose seniority rights were evidently less favorable under the arbitration award than they thought should have been the case sued to set aside that award and have their seniority rights enforced. The court dismissed the action for failure to join the remaining employees whose seniority rights would be affected by any setting aside of the award, stating:

> "Neither Local 478 nor the Spector employees who gained seniority rights at appellants' expense have been brought into this litigation. Yet, no more than the foregoing statement of the claim here asserted is necessary to make it obvious that the relief sought seriously and intimately affects and concerns them. Appellants cannot have the arbitration award set aside or their contract enforced as they ask unless the court shall deprive the union and certain union members of the benefit of a favorable arbitration award and impose a contrary interpretation of the controlling contract, in derogation of seniority benefits now being enjoyed. Cf. McMurray v. Brotherhood of Railroad Trainmen, 3

Cir. 1931, 54 F.2d 923. Any such effect on interested persons makes their presence or representation essential to the litigation. Cf. Shields v. Barrow, 1854, 17 How. 129, 15 L.Ed. 158; State of Washington v. United States, 9 Cir., 1936, 87 F.2d 421." Nix v. Spector Freight System, Inc., 264 F.2d 875, 877.

■ The case cannot be distinguished from the facts of this case. In each instance there are a group of employees whose jobs will be affected if relief sought by the plaintiff is granted. Consequently the Court holds that employees at the Captain's Wharf are indispensable parties, or in the vernacular of the new Rule 19, persons to be joined if feasible.

The defendants also moved to dismiss on the basis that the issue of whether the Captain's Wharf is or was substantially controlled by The Gas Lite is subject to the arbitration clause in the agreement. See Drake Bakeries v. Local 50, American Bakery, etc., Workers (1962), 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474. Plaintiffs, on the other hand, argue that they have no right to insist upon arbitration under the facts of this case. See Retail Clerks Union, Local 770, AFL–CIO v. Thriftimart, Inc. (1963), 59 Cal.2d 421, 30 Cal.Rptr. 12, 380 P.2d 652. While it appears as if plaintiff has no right to demand arbitration, the complaint lacks any allegations supporting an excuse from resort to arbitration. Any amended complaint should affirmatively allege such facts.

### ORDER

By reason of the foregoing decision, It Is Hereby Ordered that judgment be entered against plaintiff, and in favor of the defendants. The complaint is dismissed without prejudice and with leave to file an amended complaint by September 28, 1970.

Let judgment be entered accordingly.