759 F.2d 1477
 119 L.R.R.M. (BNA) 2488, 103 Lab.Cas. P 11,487
 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO, DISTRICT LODGE NO. 190, LOCAL
LODGE NO. 1414, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Towne Ford Sales and Town Imports, Intervenor.
 No. 84-7356.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1985.
Decided May 13, 1985.
 
 David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for petitioner.
 Kathleen Murray, Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.
 James A. Carter, San Francisco, Cal., for intervenor.
 On Petition to Review an Order of the National Labor Relations Board.
 Before KENNEDY, ALARCON and NELSON, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 International Association of Machinists and Aerospace Workers, AFL-CIO, District Lodge No. 190, Local Lodge No. 1414 (the "Union") seeks review of a decision and order of the National Labor Relations Board ("NLRB," "the Board") which dismissed its unfair labor practice complaint against Towne Ford Sales ("Ford") and Town Imports ("Imports"). After ruling, contrary to the administrative law judge, that the newly-hired mechanics at Imports did not constitute an accretion to the bargaining unit of Ford mechanics, the NLRB dismissed the Union's complaint, which had alleged that the employer unlawfully refused to extend the existing collective bargaining agreement to the Imports mechanics. 270 NLRB No. 55 (April 30, 1984). Because the NLRB did not abuse its discretion in so ruling, we affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Towne Ford Sales and Town Imports together constitute a single employer engaged in the retail sale, service, and distribution of Ford and Mitsubishi automobiles, respectively, in Redwood City, California.
 
 
 3
 Over the course of several decades, Ford and the Union had been parties to successive collective bargaining agreements covering the Ford mechanics. Prior to mid-August 1982, the Ford facility included an office and new-car showroom at 1601 El Camino, behind which was a lubrication area and the main shop facility; a body shop on adjoining property; and, across the street at 1555 El Camino, a used-car showroom and new-car preparation and conditioning department. Mechanics worked in each of the three areas.
 
 
 4
 In August 1982, after negotiating a franchise agreement with Mitsubishi, Ford's president formed Imports for the distribution, sale, and service of Mitsubishi automobiles. The 1555 El Camino property was renovated to house the new corporation, and the two Ford mechanics who had been situated there were transferred to the 1601 El Camino facility. Imports' first mechanic was hired in August 1982, and was immediately sent to school for training. Imports made its first sale on September 24. The mechanic returned on October 1 to commence working on Mitsubishi cars, although he initially worked in temporary quarters at Ford's main shop because the renovations across the street had not yet been completed. Beginning in September, the Union initiated discussions with the employer in which it sought a letter of understanding which would extend the existing collective bargaining agreement to Imports mechanics. After failing to achieve its objective, the Union filed its complaint with the NLRB on October 15. A second mechanic was hired by Imports on November 29, 1982.
 
 
 5
 The Union's unfair labor practice complaint charged the employer with violations of sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. Secs. 158(a)(5) and (a)(1), which make it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees," or "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in section 7 of the Act. Section 7 rights includethe right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection....
 
 
 6
 29 U.S.C. Sec. 157.
 
 
 7
 The administrative law judge found that the Imports mechanics were properly considered by the Union to be an accretion to the Ford mechanics bargaining unit, and that therefore the employer had engaged in unfair labor practices by refusing to recognize the Union as the Imports mechanics' representative and by failing to extend the coverage of the existing bargaining agreement to these new employees.
 
 
 8
 The NLRB reached a contrary conclusion, and on the same facts ruled that the Imports mechanics could not simply be accreted to the Ford mechanics' bargaining unit. It consequently dismissed the Union's complaint in its entirety. We have jurisdiction pursuant to 29 U.S.C. Sec. 160(f).
 
 ISSUE PRESENTED
 
 9
 Did the NLRB abuse its discretion in ruling that "the General Counsel has not established by a preponderance of the evidence that the mechanics at Town Imports constitute an accretion to the existing collective-bargaining unit represented by the Union" and in consequently dismissing the complaint?
 
 STANDARD OF REVIEW
 
 10
 The NLRB has "extremely broad" discretion in deciding a question of accretion of employees to an existing bargaining unit, and we shall not disturb its judgment absent an abuse of discretion. NLRB v. Sunset House, 415 F.2d 545, 548 (9th Cir.1969); NLRB v. Food Employers Council, Inc., 399 F.2d 501, 504-05 (9th Cir.1968); see also NLRB v. Retail Clerks Local 588, 587 F.2d 984, 988 (9th Cir.1978). The standard is sometimes cast in terms of "arbitrary and capricious" NLRB conduct. See NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 386 (9th Cir.), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979); accord, Universal Security Instruments, Inc. v. NLRB, 649 F.2d 247, 253 (4th Cir.), cert. denied, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); Lammert Industries v. NLRB, 578 F.2d 1223, 1225 (7th Cir.1978); NLRB v. R.L. Sweet Lumber Co., 515 F.2d 785, 794 (10th Cir.), cert. denied, 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975). Some of these courts have found Board rulings to be arbitrary and capricious where they have been unexplained departures from NLRB precedent. See Consolidated Papers, Inc. v. NLRB, 670 F.2d 754, 757 (7th Cir.1982); Westinghouse Electric Corp. v. NLRB, 506 F.2d 668, 669, 673 (4th Cir.1974).
 
 DISCUSSION
 1. The Finding of No Accretion
 
 11
 "An accretion is the addition of ... employees to an existing bargaining unit where these additional employees share a sufficient community of interest with unit employees and have no separate identity. The additional employees are then absorbed into the existing unit without first having an election and are governed by the unit's choice of bargaining representative." Consolidated Papers, 670 F.2d at 756-77. The most common example of accretion is the addition of employees to an existing unit through normal employee turnover. Sheraton-Kauai Corp. v. NLRB, 429 F.2d 1352, 1354 n. 2 (9th Cir.1970).
 
 
 12
 Numerous factors may enter into an NLRB determination on a question of accretion of a group of employees into an existing bargaining unit. These include: functional integration of the business, centralized control of management, similarity of working conditions, collective bargaining history, local power to hire and fire, degree of employee interchange between the groups, and geographical distance, Sunset House, 415 F.2d at 548, similarity of job classifications, skills, functions, and products, Lammert Industries, 578 F.2d at 1225, and centralization of supervision, particularly in regard to labor relations, hiring, discipline, and control of day-to-day operations. Peter Kiewit Sons' Co., 231 NLRB 76 (1977).
 
 
 13
 In the present case, the NLRB found that Ford and Imports
 
 
 14
 have common offices, common ownership, and common management at the policymaking level. The two enterprises engage in joint advertising and have a joint salesmen corps. Their president formulates the labor policies affecting the employees of both companies. He spends approximately 30 percent of his working time running Town Imports. The mechanics of Towne Ford Sales perform work on domestic cars while Town Imports mechanics work on foreign cars. Town Imports mechanics use some of Towne Ford Sales equipment and tools and Towne Ford mechanics occasionally work on Town Imports cars. The two groups of employees possess the same job skills and utilize similar tools and equipment. The locations are across the street from each other. However, Towne Ford Sales and Town Imports each has its own service manager who hires the mechanics and directs the work in each of the facilities. Thus, there is no common immediate supervisor and no day-to-day contact between the two groups of employees.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 ... [T]here is no evidence of "actual" interchange of employees or of any regular contacts between the mechanics employed at the two locations. It is also apparent that the daily operations of the facilities are separate and autonomous and that the day-to-day control and supervision of matters of interest to the employees are handled entirely within each of the facilities by the respective service managers.
 
 
 18
 The Board found no accretion, based upon two "especially important" factors: the lack of employee interchange or regular contact, and the separate day-to-day supervision.
 
 
 19
 The Board did not in these proceedings significantly depart from its usual mode of decision and assessment of factors. For instance, the Board similarly found no accretion in a fairly recent case in which the alignment of factors was almost identical to that in the present case. Bryan Infants Wear Co., 235 NLRB 1305, 1306 (1978) (relying upon lack of common day-to-day supervision and absence of employee interchange or contact). The Union argues, nevertheless, that the Board erred by not "effectively balancing all the factors," in that it relied heavily upon two of the factors. However, the Board must consider the entire factual situation, and its discretion is not limited by a requirement that its judgment be supported by all, or even most, of the potentially relevant factors. See, e.g., Universal Security Instruments, 649 F.2d at 254.
 
 
 20
 Moreover, the Board's legal conclusion of no accretion seems to lie well within the range of properly exercised NLRB discretion. The NLRB is charged with the responsibility to balance the competing policy considerations which inhere in an accretion determination: stability of labor relations and employees' freedom to choose their own bargaining agents. See, e.g., Food Employers Council, 399 F.2d at 504. Employee freedom, moreover, "must be paramount," Pacific Southwest Airlines v. NLRB, 587 F.2d 1032, 1037 (9th Cir.1978), and so "the accretion doctrine should be applied restrictively as it offends this basic employee right." Sunset House, 415 F.2d at 547; see also, e.g., Food Employers Council, 399 F.2d at 505 n. 1 ("it would seem advisable ... to resolve close questions ... in favor or proselytizing the employees in question rather than seeking to represent them through the fait accompli of accretion"); Boire v. International Brotherhood of Teamsters, 479 F.2d 778, 796-97 (5th Cir.1973) (a determination of accretion "forecloses a vote and restricts the employees in the exercise of their basic right to select their bargaining representative[,] ... [which] is the predominant consideration under Section 7 of the Act and is to be restricted only under 'compelling conditions' ") (quoting Pix Manufacturing Co., 181 NLRB 88, 90 (1970)).
 
 
 21
 The Board's ruling of no accretion was not arbitrary and capricious, and did not constitute an abuse of discretion.
 
 
 22
 2. The Lack of an Explicit Finding that the Imports Mechanics Constituted an Appropriate Bargaining Unit
 
 
 23
 The Union argues that the Board's no-accretion finding was improper because the Board did not make clear that the Imports mechanics would, by themselves, constitute "a unit appropriate for ... the purposes of collective bargaining" under section 9(b) of the Act, 29 U.S.C. Sec. 159(b). The Board's decision stated only that the Imports mechanics "may" constitute a separate appropriate bargaining unit. In essence, the Union contends that a finding that the group of Imports mechanics was itself an appropriate bargaining unit was a necessary precondition to the ruling of no accretion. Consequently, we have been urged to remand for an explicit finding on this issue. We decline to do so, because the Union's position is the product of logical confusion and is without merit.
 
 
 24
 It is true that "[e]mployee freedom of choice will be denied [by accreting them to the existing unit] only when the [group of] new employees ... cannot itself constitute an appropriate unit." Retail Clerks Local 588, 587 F.2d at 987; accord, e.g., Retail Clerks Local 588 v. NLRB, 565 F.2d 769, 772 (D.C.Cir.1977). In other words, the fact that a group of new employees can itself constitute a separate bargaining unit is itself sufficient to mandate a refusal to accrete those employees to an already-existing unit.
 
 
 25
 But it clearly cannot be a necessary precondition to a no-accretion finding that a group of employees sought to be accreted constitutes by itself an appropriate unit, because there are other states of affairs which might likewise properly lead to no accretion. For instance, the new employees might be accreted to a different group of existing employees, and not the one to which accretion is sought. Or a situation might emerge (as in the present case) where accretion is improper, despite the only appropriate bargaining unit being the combined grouping of old and new employees, because the new employees should be given an opportunity to express in a self-determination election whether they wish to join into the larger, combined unit or remain unrepresented. See Pacific Southwest Airlines, 587 F.2d at 1036 (NLRB found combined unit to be only appropriate one and ordered election, not accretion; on appeal, unit determination overturned on other grounds); Kansas City Terminal Elevator Co., 269 NLRB No. 68 (1984) (accretion issue not raised; election ordered after determination that only appropriate unit would be the combination of existing unit plus additional employees at a second facility). We have declared that
 
 
 26
 accretion is a narrower doctrine [than a determination that a combined grouping of old and new employees is an appropriate unit]: to be accreted, the new employees must have no separate identity, and therefore nothing approaching a distinct community of interests, apart from the larger group. [Citation.] It follows that accretion may be initially rejected as a legitimate alternative, though the employees are subsequently added to the existing unit once they have elected to do so.
 
 
 27
 Pacific Southwest Airlines, 587 F.2d at 1041-42 n. 16.
 
 
 28
 Thus, the Union is mistaken in its contention that either (1) the Imports mechanics constitute an appropriate separate unit, in which case accretion must not be granted, or (2) they do not, in which case accretion must be granted. Other alternatives exist, and an NLRB refusal to accrete a group of employees to an existing bargaining unit need not necessarily turn on the question whether that group itself could constitute a distinct unit.
 
 
 29
 Consequently, the Board's refusal to accrete the Imports mechanics did not require any explicit and unequivocal finding that they constituted a separate unit. The Board's order did not in itself preclude a later, post-election expansion of the Ford mechanics' unit to include the new Imports employees. In not permitting accretion, the Board merely determined that the interests of the Imports mechanics failed to coincide precisely with those of their Ford counterparts, such that the new employees would be "unreasonably disenfranchised regarding union membership" if they were to be added to the existing bargaining unit without having freely chosen this course over remaining unrepresented.
 
 
 30
 The NLRB's practice of saying that a group of employees sought to be accreted "may constitute a separate appropriate unit," although found objectionable by the Union, offers the Board the flexibility to adapt to new circumstances in a particular case. The selective use of ambiguity enables the Board to avoid committing itself to a particular unit determination any earlier than absolutely necessary, aware that an employer's operations may change tomorrow. See, e.g., Kansas City Terminal Elevator Co., supra. A ruling on accretion can stand on its own, with further questions of representation left for another time, such as when a self-determination election is requested. In the present case, for instance, the Union filed its charges before the new Imports operation had gotten cleanly off the ground: only one mechanic had been hired, the renovations of facilities had not yet been completed, and operations were apparently still in a state of flux. Depriving the NLRB of flexibility in the timing of its unit determinations would merely contribute to premature and incorrect determinations, thereby ultimately depriving both employees and employers of their rights under the labor laws.
 
 CONCLUSION
 
 31
 The NLRB did not abuse its discretion in ruling that the new mechanics at Town Imports did not constitute an accretion to the existing Towne Ford Sales mechanics bargaining unit. It also committed no error in omitting an explicit determination that the Imports mechanics constituted by themselves a separate appropriate bargaining unit. Accordingly, we find the Board's dismissal of the Union's unfair labor practices complaint to have been proper, and its judgment is
 
 
 32
 AFFIRMED.
 
 KENNEDY, Circuit Judge, concurring:
 
 33
 In the context of labor law, an accretion occurs when new employees are added to a pre-existing bargaining unit. NLRB v. Sunset House, 415 F.2d 545, 547 (9th Cir.1969). The question of accretion is similar, though perhaps not parallel, to the question whether a particular unit is the appropriate one for bargaining purposes, NLRB v. Food Employers Council, Inc., 399 F.2d 501, 502 (9th Cir.1968). As such, it is committed to the discretion of the NLRB. Sunset House, 415 F.2d at 548. The Board did not abuse its discretion here.