577 F.2d 649
 99 L.R.R.M. (BNA) 2431, 84 Lab.Cas. P 10,710
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
Alsam G. Small, Intervenor,
v.
HOSPITAL AND INSTITUTIONAL WORKERS UNION, LOCAL 250, Respondent.
 No. 77-2081.
 United States Court of Appeals,
Ninth Circuit.
 July 3, 1978.
 
 Joseph Norelli (argued), Washington, D. C., for petitioner.
 Bari Stolmack (argued), of Van Bourg, Allen, Weinberg, Williams & Roger, San Francisco, Cal., for respondent.
 On Application for Enforcement of an Order of The National Labor Relations Board.
 Before TUTTLE,* DUNIWAY and WRIGHT, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The Board seeks enforcement of its order adopting the decision of an Administrative Law Judge (ALJ) that Hospital and Institutional Workers Union Local 250 violated § 8(b)(1)(A) and (2) of the National Labor Relations Act (Act) (29 U.S.C. § 158(b)(1)(A) and (2)) by agreeing with Kaiser Foundation Hospitals in 1974 to add non-member therapists to a bargaining unit without a showing of majority support and to require all therapists either to join the union or to pay the equivalent of monthly dues. 228 N.L.R.B. No. 57 (1977).
 
 
 2
 The Board's conclusion that Local 250 committed unfair labor practices rests upon the ALJ's finding that Local 250 had not represented non-member therapists before the 1974 contract became effective. Substantial evidence in the record supports the finding and we enforce the Board's order.
 
 I.
 
 3
 A union violates § 8(b)(1)(A) of the Act (29 U.S.C. § 158(b)(1)(A)) when it attempts to impose a collective bargaining agreement upon a group of employees, the majority of whom it does not represent. International Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 738-39, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961); see Retail Clerks Local 770 v. NLRB, 370 F.2d 205, 208 (9th Cir. 1966).
 
 
 4
 If such an agreement includes a union shop or agency shop provision, the union also violates § 8(b)(2) of the Act (29 U.S.C. § 158(b)(2)), by causing an employer to encourage union membership. See NLRB v. Food Employers Council, Inc., 399 F.2d 501 (9th Cir. 1968); Sheraton-Kauai Corp. v. NLRB, 429 F.2d 1352 (9th Cir. 1970); Local 1424, IAM v. NLRB, 362 U.S. 411, 412-14, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) (dictum).
 
 
 5
 Therefore, if the ALJ was correct in finding that Local 250 did not represent non-member therapists before the 1974 contract took effect, the union committed the unfair labor practices when it agreed with Kaiser to impose the agency-shop provision on all therapists without first obtaining a showing of majority support.
 
 II.
 
 6
 Local 250 has had a collective bargaining relationship with Kaiser for more than 20 years. All of the bargaining agreements included a scale of wages and benefits for physical therapists which Kaiser provided regardless of union membership.
 
 
 7
 Before 1974, the collective bargaining agreements exempted physical, speech, and occupational therapists from the mandatory union membership required of other employees. Only therapists who chose to join Local 250 were required to maintain union membership.
 
 
 8
 A. 1953 Agreement.
 
 
 9
 The 1953 agreement, which first covered technical employees, defined "employees" to include professional therapists working in the hospital's physiotherapy department. Within Article III of the agreement, § 1 provided that the Hospital recognized Local 250 as exclusive bargaining agent for all covered employees, § 2 required maintenance of union membership by all employees and § 3 required all new employees to join the union within 31 days of employment. Section 4 provided:
 
 
 10
 Exceptions The provisions of Article III, Sections 1, 2, and 3, hereinabove, shall not apply to the following classifications except as hereinafter stated: Physical Therapists, Speech Therapists, and Occupational Therapists shall not be required to become members of the Union as a condition of employment; however, such Therapists who have become or shall become members of the Union shall be required to maintain membership in the Union thereafter as a condition of employment for the duration of the agreement.
 
 
 11
 Although it is argued that § 4 is susceptible to different interpretations, the plain meaning of its language is that Local 250 was not then the exclusive bargaining agent for non-member therapists.
 
 
 12
 B. 1962 Agreement.
 
 
 13
 The parties modified Article III in 1962. Section 1, providing for exclusive recognition, remained unchanged. Section 2 included the provisions contained in §§ 2 and 3 of the earlier contracts. The new § 3 contained exceptions and differed from former § 4:
 
 
 14
 The provisions of Article III, Sections 1 and 2 hereinabove, shall not apply to the classifications of Physical Therapists, Speech Therapists, and Occupational Therapists; provided, however, that Section 1 of this Article III shall be applicable to employees in these classifications who have become or shall hereafter become members of the Union and with respect to such employees they shall be required to maintain membership in the Union thereafter.
 
 
 15
 We agree with the ALJ's finding that § 3, which remained unchanged until 1974, accorded recognition to Local 250 as exclusive bargaining agent only of those therapists who were union members.
 
 
 16
 C. 1974 Agreement.
 
 
 17
 When Local 250 and Kaiser failed to agree upon certain provisions of a new agreement in 1974, they submitted to a nonbinding fact-finding procedure. The factfinder, based upon representations that all therapists had been included in the bargaining unit from its inception, recommended adoption of Local 250's proposed modification of Article III, which included an agency-shop provision applicable to the therapists. Local 250 characterizes the agency-shop fee as a means to ensure that all therapists contribute their fair share of the cost of representation.
 
 
 18
 The parties abided by the factfinder's recommendations. Paragraph 4 of the new agreement carried forward the union-shop provision that formerly had applied to all employees except therapists. Paragraph 6, however, contained the new union-proposed modification:
 
 
 19
 Effective ninety (90) days after the ratification date of this Agreement, employees in the classifications of Physical Therapist, Speech Therapist and Occupational Therapist must either satisfy the Union membership requirements in accordance with paragraph 4 above or in lieu of becoming and remaining a Union member pay to the Union a monthly fee equivalent to the established monthly dues of the union.
 
 
 20
 Kaiser informed the therapists of the new agency-shop obligation by a March 13, 1975 memorandum. On May 13, 1975, Local 250 Secretary-Treasurer Timothy J. Twomy sent a letter to all therapists, stating:
 
 
 21
 I hereby demand that you meet your obligation under Article III, Section 3, and remit the appropriate dues or fees within 15 days. Your failure will result in our notification to Kaiser Hospitals of your failure to comply with this section, demanding your termination.
 
 III.
 
 22
 Because the sole question on appeal is whether sufficient evidence supports the Board's decision that Local 250 committed unfair labor practices, we first consider the standard of review. Section 10(e) of the Act provides that "findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e) (1970). See, e. g., NLRB v. Heath Tec Division, 566 F.2d 1367, 1369 (9th Cir. 1978).
 
 
 23
 The substantial evidence test must, however, take into account those matters in the record that conflict with the Board's decision. NLRB v. Tomco Communications, Inc., 567 F.2d 871, 877 (9th Cir. 1978) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).
 
 
 24
 The court must abide by the Board's choice between two possible outcomes even where the court would justifiably decide differently if the matter were before it de novo. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Brooks v. NLRB, 538 F.2d 260, 261 (9th Cir. 1976).
 
 
 25
 Where the ALJ relies on witness credibility in reaching a decision, this court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence, NLRB v. Western Clinical Laboratory, Inc., 571 F.2d 457, 459 (9th Cir. 1978), or where they are "inherently incredible or patently unreasonable." NLRB v. Anthony Co., 557 F.2d 692, 695 (9th Cir. 1977).
 
 IV.
 
 26
 The factual issue is whether, before the 1974 contract became effective, Local 250 represented all Kaiser therapists or only those who were union members. A substantial majority of the professional therapists employed in December 1974 testified that they had never designated nor desired Local 250 as their bargaining representative.
 
 
 27
 Nevertheless, it is undisputed that all therapists received identical union-negotiated wages and benefits whether or not they were union members. That all therapists received identical treatment does not, however, establish union representation. If the benefits paid to non-member therapists arose not from contractual obligation but from Kaiser's unilateral decision to extend those benefits to non-members, the fact of identical treatment would not show recognition of the union as representative of the therapists. See J. F. Johnson Lumber Co., 73 N.L.R.B. 320, 322 n.4 (1947).
 
 
 28
 The plain meaning of the pre-1974 bargaining agreements strongly supports the ALJ's finding that Local 250 represented only its members. Nonetheless, where there is a record of extending negotiated benefits to all employees regardless of union membership, the Board examines the intent and practices of the parties to determine the composition of the bargaining unit. E. g., Post Houses, Inc., 173 N.L.R.B. 1320 (1968).
 
 
 29
 A. Intent.
 
 
 30
 The ALJ found insufficient evidence to support the conclusion that non-member therapists were intended to be represented by the union. He based his finding on the lack of specific evidence relating to therapists during contract negotiations in the early 1950's.
 
 
 31
 The ALJ strongly credited testimony by Edwin Bell, Kaiser's Vice President for Employee Relations. Based on that, the judge found that Kaiser was aware that therapists did not desire union representation when the earlier contracts were negotiated and that Kaiser had a policy of parity of benefits, under which it extended negotiated terms to all employees in a classification regardless of union membership.
 
 
 32
 The union notes correctly that Bell's testimony is subject to question because he was not present during the northern California negotiations in the early 1950's, but was then working for Kaiser in southern California. Bell did testify, however, that the southern California contract had a similar therapist-exclusion clause and that he was familiar with the reasons underlying the exclusion.
 
 
 33
 The ALJ found that therapists had never participated directly in labor-management negotiations and that there was no substantial credible evidence that they had participated indirectly in the negotiating process during the 20-year period before 1974. He discredited the testimony of three union witnesses who portrayed a continuous interchange between Local 250 and all therapist personnel.
 
 
 34
 Even if we were to discredit totally the Bell testimony, our review of the record discloses that the ALJ was correct in concluding that the evidence of intent does not overcome the plain language of the contract exception clause that the negotiating parties intended Local 250 to represent member therapists only.
 
 
 35
 B. Practice.
 
 
 36
 Only a token number of professional therapists were ever Local 250 members. Of those who appeared at the hearing, three had been Local 250 members before the 1974 agreement became effective and 36 had not.
 
 
 37
 The ALJ found that the testimony as to what had been told to newly hired therapists was general, indefinite, and untrustworthy and precluded a finding that new employees were told that they were represented by Local 250 whether or not they became members. The record supports the conclusion that non-member therapists were not considered part of the bargaining unit.
 
 V.
 
 38
 Local 250 argues that the 1974 health care amendments to the Act, Pub.L. No. 93-360, 88 Stat. 395 (codified at 29 U.S.C. §§ 152, 158, 169 (Supp. V 1975)), which covered the parties here, seek to prevent undue proliferation of bargaining units in the health care industry and that enforcement of the Board's order would exclude therapists from the existing unit, thereby creating a separate professional unit in conflict with that goal.
 
 
 39
 The argument is unpersuasive. There is no indication that the goal of avoiding undue proliferation outweighs the therapists' interest in choosing for themselves whether they wish to be represented by the union. We question whether such proliferation would be "undue." In any event, the record before us does not show that this issue was raised before the Board. Accordingly, we do not reach it. 29 U.S.C. § 160(e) (1970).
 
 VI.
 
 40
 Although the factual question here is close, there is substantial support in the record to uphold the Board's order. We recognize that the Board's discretion is exceptionally broad in determining whether a bargaining unit includes certain employees, especially "where the Board has resolved a close question in favor of permitting the affected employees to choose for themselves their bargaining representatives." NLRB v. Sunset House, 415 F.2d 545, 548 (9th Cir. 1969). See NLRB v. Food Employers Council, Inc., 399 F.2d 501, 505 n.1 (9th Cir. 1968). There is no evidence that Local 250 ever had obtained majority support in a unit including professional therapists. On the other hand, it is clear that a substantial majority of therapists do not desire representation by Local 250.
 
 
 41
 Enforcement granted.
 
 
 
 *
 Senior Circuit Judge, for the Fifth Circuit