670 F.2d 754
 109 L.R.R.M. (BNA) 2815, 93 Lab.Cas. P 13,235
 CONSOLIDATED PAPERS, INC., Petitioner,
Sandra M. Allen, et al., Party-Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Office & Professional Employees International Union, Local
No. 95, Intervening Respondent.
 No. 80-2794.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 29, 1981.
Decided Feb. 12, 1982.
 
 Robert E. Mann, Chicago, Ill., for petitioner.
 Susan Williams, N.L.R.B., Washington, D. C., for respondent.
 Joseph E. Finley, Princeton, N. J., for intervenor-respondent.
 Before PELL and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 This is a petition for review of an order of the National Labor Relations Board (the "Board") involving Consolidated Papers, Inc. (the "Company"). The Board has cross-petitioned for enforcement of its order. The Board found that the Company committed an unfair labor practice by refusing to bargain with the Office and Professional Employees International Union, Local No. 95 (the "Union") concerning the wages, hours and working conditions of six employees holding jobs as Customer Service Representatives ("CSRs"). 253 NLRB No. 34 (1980). The Board's order was predicated on an earlier decision that the CSRs constituted an accretion to the existing bargaining unit. We conclude that the Union's unit clarification petition, which resulted in the Board's finding of accretion, was not properly entertained by the Board. Accordingly, we deny enforcement of the Board's order.I.
 
 
 2
 The Company is engaged in the manufacture and sale of paper and paper products at its plant and home office in Wisconsin Rapids, Wisconsin. The Union was certified in 1944 to represent a class of office workers employed at the Company's Wisconsin Rapids facility. Since then, the parties have entered into a series of collective bargaining agreements, each of which has contained a recognition clause describing the bargaining unit covered by the contract. Since 1955, the recognition clause in each successive contract has defined the unit to include "hourly paid employees engaged in office and clerical work" (emphasis added). Managerial, supervisory, professional, confidential and technical employees have been expressly excluded from the unit by the recognition clause.[1] The parties have historically implemented this contractual unit description by excluding from the bargaining unit employees who perform work that is exempt from the coverage of the Fair Labor Standards Act.
 
 
 3
 The controversy in the instant case followed the Company's decision in July 1979 to transfer the location of its CSRs from Chicago, where they had been headquartered for 36 years, to the Wisconsin Rapids plant. The CSRs are and have been salaried positions and, as the Board found, they are exempt from Fair Labor Standards Act coverage.
 
 
 4
 On November 30, 1979, the Union filed a unit clarification petition pursuant to section 9(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 159(b) (1976), seeking to include the CSRs in the existing Wisconsin Rapids bargaining unit.[2] The Company argued, inter alia, that a unit clarification petition could not be entertained because the CSRs were excluded from the bargaining unit by the terms of the contract and by historical practice. Rejecting these arguments, the Regional Director held that the CSRs shared a community of interest with the unit employees and hence constituted an accretion to the bargaining unit. The Board declined to review this decision. When the Company subsequently refused to bargain with the Union concerning the CSRs, this unfair labor practice proceeding followed.[3]
 
 II.
 
 5
 An accretion is the addition of a relatively small group of employees to an existing bargaining unit where these additional employees share a sufficient community of interest with unit employees and have no separate identity. The additional employees are then absorbed into the existing unit without first having an election and are governed by the unit's choice of bargaining representative. Lammert Industries v. NLRB, 578 F.2d 1223, 1225 n.3 (7th Cir. 1978); Universal Security Instruments, Inc. v. NLRB, 649 F.2d 247, 253 (4th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); NLRB v. Food Employers Council, Inc., 399 F.2d 501 (9th Cir. 1968).
 
 
 6
 A finding of accretion by the Board is similar to the Board's function of defining an appropriate bargaining unit.[4] In both situations, the Board uses its expertise to determine the most appropriate employee composition for a particular unit. Universal Security Instruments, 649 F.2d at 253; Lammert Industries, 578 F.2d at 1225. A finding of accretion, like the certification of an appropriate bargaining unit, is committed to the Board's sound discretion, and may not be set aside unless the reviewing court is convinced that the Board has acted in an arbitrary and capricious manner. Universal Security Instruments, 649 F.2d at 253; Lammert Industries, 578 F.2d at 1225.
 
 
 7
 Although broad, the Board's discretion in accretion cases is not without limit. In particular, when the Board adopts a policy to guide it in the exercise of its discretion, the original very broad discretion is to some extent narrowed, and subsequent decisions must be reasonably consistent with the expressed policy. If the Board chooses to depart from established policy, it must explicitly announce the change and its reasons for the change. Midwest Stock Exchange, Inc. v. NLRB, 620 F.2d 629 (7th Cir.), cert. denied, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980); NLRB v. Northeast Oklahoma City Manufacturing Co., 631 F.2d 669, 673-74 (10th Cir. 1980); NLRB v. Osborn Transportation, Inc., 589 F.2d 1275, 1279 (5th Cir. 1979). Where the Board's order is inconsistent with its declared policy as established by its previous decisions, this court will deny enforcement of the Board's decision in order to repudiate arbitrary action. Midwest Stock Exchange, supra. See also Monmouth Medical Center v. NLRB, 604 F.2d 820, 823 (3d Cir. 1979).
 
 
 8
 In the instant case, we do not reach the question whether the Board erred in concluding that the CSRs share a community of interest with unit employees sufficient to justify an accretion. We believe that the Board failed to adhere to its own precedent, which articulates a policy not to entertain unit clarification petitions in circumstances such as those presented here. Expressing no opinion on the wisdom of the policy, we limit our inquiry to the fairness of the Board's application of that policy in the instant case. Midwest Stock Exchange, 620 F.2d at 634.
 
 
 9
 In Wallace-Murray Corp., 192 NLRB 1090 (1971), the Board announced a policy not to entertain unit clarification petitions midway in the term of an existing collective bargaining agreement that "clearly defines" the bargaining unit covered by the contract. See also Shop Rite Foods, Inc., 247 NLRB No. 143 (1980); Massachusetts Teachers Ass'n, 236 NLRB 1427 (1978); Arthur C. Logan Memorial Hospital, 231 NLRB 778 (1977); Northwest Publications, Inc., 200 NLRB 105 (1972). To allow such mid-term petitions, the Board has stated, would be disruptive of voluntarily continued bargaining relationships. The Board's consistent procedure in such cases, therefore, has been to dismiss the unit clarification petition without prejudice to the filing of another petition "at an appropriate time." Wallace-Murray, 192 NLRB at 1090. An appropriate time is shortly before the expiration of the current collective bargaining agreement. Shop Rite Foods, Inc., 247 NLRB No. 143 (1980); Peerless Publications, Inc., 190 NLRB 658 (1971). At that time, the parties are presumably commencing negotiation of a new contract and they may either negotiate a modification in the contractual unit description without resort to a unit clarification proceeding or seek such a clarification, which may then be incorporated into the contract.[5] The underlying purpose of the Wallace-Murray rule, the Board has indicated, is to spare the parties unnecessary labor disputes. Shop Rite Foods, Inc., 247 NLRB No. 143 (1980).
 
 
 10
 The effect of Wallace-Murray is to leave the party seeking to include a group of employees in the unit two options: (1) to await the expiration of the current collective bargaining agreement and file another unit clarification petition with the Board, or (2) to seek an immediate self-determination election among the employees sought to be included. The Wallace-Murray rule thus deals only with the timeliness of unit clarification petitions; the rule does not, as the Union argues, allow an employer to escape forever a finding of accretion. The rule expresses a policy of deferring, during the term of the contract, to the negotiated unit description.[6]
 
 
 11
 The Regional Director, in a decision that the Board declined to review, did not even discuss Wallace-Murray or its progeny in dismissing the Company's argument that the contractual unit description barred the Union's unit clarification petition in the instant case.[7] Instead, the Regional Director cited cases in which the Board has found that a bargaining unit may be appropriate even if it includes both salaried and hourly paid employees. He concluded that the method of compensation for a particular job classification is not dispositive on the question of accretion where there is otherwise a community of interest. This discussion of the issue, however, misconstrues the nature of the Wallace-Murray rule. Whether the Board would, as an initial matter, have included the salaried CSRs in a bargaining unit together with hourly paid employees is basically irrelevant to the applicability of Wallace-Murray. The rule reflects a discretionary policy of the Board not to entertain certain unit clarification petitions filed during the mid-term of a contract; whether the rule applies in a given case has nothing to do with the appropriateness of the bargaining unit. The Regional Director, despite the Company's citation of Wallace-Murray in its briefs, failed to explain why the instant case did not trigger the rule. We have examined Board precedent and conclude that Wallace-Murray does apply in the instant case, and that, therefore, the Union's unit clarification petition should have been dismissed as untimely.
 
 
 12
 Both of the requirements for application of the Wallace-Murray rule were present in the instant case. First, the Union's unit clarification petition was filed during the mid-term of the existing collective bargaining agreement.[8] Second, the contract's description of the bargaining unit as "hourly paid" office and clerical workers "clearly defined" the unit to exclude the salaried CSRs. We are unpersuaded by the argument of the Board and the Union that the reference in the contract to "hourly paid" employees is merely a term of description and not of limitation. The definition of the unit as "hourly paid" employees by its terms excludes employees, such as the salaried CSRs, who are not hourly paid. The contract's list of specific exclusions (managerial, supervisory, professional, technical and confidential employees) cannot reasonably be construed as exhaustive; rather, that list simply removes from the coverage of the contract jobs that might otherwise fall within the included class of "hourly paid" office and clerical workers. We are unable to disregard the plain language of the contractual unit description, and thus conclude that it "clearly defined" the bargaining unit to exclude the CSRs. The Wallace-Murray rule, therefore, should have been applied by the Regional Director.
 
 
 13
 The conclusion that the Wallace-Murray rule applies in the instant case is supported by the Board's decision in Monongahela Power Co., 198 NLRB 1183 (1972). In that case, a union filed a unit clarification petition to include two categories of salaried employees in a unit described by the contract as consisting of hourly paid employees. Applying Wallace-Murray, the Board dismissed the petition as untimely. The Board and the Union attempt to distinguish this case, however, emphasizing that in Monongahela Power, unlike the instant case, the job classifications at issue had existed at the employer's facility for many years without undergoing any substantial change. They maintain that the Wallace-Murray rule can apply only when the contractual unit description was negotiated with specific reference to the disputed job classification. In the instant case, they maintain, the fact that the CSR positions were not located in Wisconsin Rapids at the time the "hourly paid" unit definition was negotiated precludes application of Wallace-Murray.
 
 
 14
 The Board's and Union's reliance on Monongahela Power is misplaced. In applying Wallace-Murray in that case, the Board relied solely on the language of the contract, which limited the unit to hourly paid workers. The presence of the disputed jobs on location for many years without any substantial change was emphasized by the Board in connection with its alternative holding that the unit clarification petition was barred by the historical exclusion of the jobs from the unit. Unlike the rule respecting historical exclusion,[9] the Wallace-Murray rule does not presuppose or require that the job categories in dispute be in existence at the time the collective bargaining agreement was executed. The rule is designed to prevent a party from agreeing to a unit definition and shortly thereafter invoking the unit clarification procedure to upset that agreement. As long as the unit placement of the disputed job classification is clearly defined in the contract, the disruption of bargaining relationships resulting from a mid-term clarification is just as great when the disputed classification is newly created as when it was created before the contract was negotiated.[10] Thus, the fact that the CSRs were introduced to the Wisconsin Rapids facility after the unit description was framed does not render the Wallace-Murray rule inapplicable. Because the contract clearly defined the bargaining unit to exclude salaried employees such as the CSRs, the Regional Director should have invoked Wallace-Murray and dismissed the Union's unit clarification petition.
 
 
 15
 Consequently, we grant the Company's petition for review and deny enforcement of the Board's unfair labor practice order, which was predicated on a unit clarification proceeding not properly entertained.
 
 
 16
 PETITION FOR REVIEW GRANTED.
 
 
 17
 ENFORCEMENT DENIED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 The recognition clause of the collective bargaining agreement in effect at the time these proceedings were commenced provided:
 The Company recognizes the Union as the exclusive collective bargaining agent as to wages, hours, working conditions and other conditions of employment for all eligible employees engaged in office and clerical work in the offices of Wisconsin Rapids Division, Kraft Division, Paperboard Product Division, Main Office, Consoweld Corporation, and Consoweld Distributors, Inc. and any successors or assigns, all of which are located in the city of Wisconsin Rapids, Wood County, Wisconsin; and all eligible employees engaged in office and clerical work and employees classified as Technicians in the offices of the Wisconsin River Division, located in the Village of Whiting and the Township of Linwood, Portage County, Wisconsin. The term "eligible employees" shall be defined as "hourly paid employees engaged in office and clerical work." It is agreed that managerial, supervisory, professional, technical (other than those covered by this agreement), and confidential employees as defined in the Labor Management Relations Act of 1947, as amended, are excluded.
 The term of this agreement extended from June 1, 1978 through May 31, 1980.
 
 
 [2]
 The petition sought inclusion of eight CSRs. The Regional Director found that two of the CSRs were supervisory employees and refused to consider their inclusion in the unit. The Union has not contested this finding. At issue now, therefore, is the unit placement of six CSRs
 
 
 [3]
 The six employees presently occupying the CSR positions moved unsuccessfully to intervene in the unfair labor practice proceeding. They also filed suit in the United States District Court for the Western District of Wisconsin, seeking injunctive relief from the Board's action in clarifying their status as members of the existing bargaining unit. Allen v. NLRB, No. 80 C 199 (W.D.Wis., filed May 5, 1980). This suit is now pending in the district court. We granted the six employees leave to intervene in the instant petition for review. Given our disposition of the case, we do not address these employees' contention that the Board violated their rights by failing to grant them notice and an opportunity to be heard on the merits of the Union's unit clarification petition
 
 
 [4]
 As a general rule, however, the courts have applied the accretion doctrine more restrictively because it deprives the newly added employees of the opportunity to express their preferences regarding union representation. Westinghouse Electric Corp. v. NLRB, 440 F.2d 7, 11 (2d Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 93, 30 L.Ed.2d 93 (1971); Sheraton-Kauai Corp. v. NLRB, 429 F.2d 1352, 1355-56 (9th Cir. 1970)
 
 
 [5]
 In some circumstances, however, the Board has been willing to entertain unit clarification petitions filed shortly after a new labor contract has been executed. The Board has allowed petitions in such cases where one party has during contract negotiations proposed a modification in the unit description, but, in order to gain agreement on a final contract, has agreed not to press the issue. In this situation, the party seeking the modification is deemed not to have acquiesced in the negotiated unit description. WNYS-TV (WIXT), 239 NLRB 170 (1978); Massey-Ferguson, Inc., 202 NLRB 193 (1973); but cf. Arthur C. Logan Memorial Hospital, 231 NLRB 778 (1977). The unit clarification petition in the instant case does not come within this apparent exception to the Wallace-Murray rule
 
 
 [6]
 The Union contends that even if the Board improperly entertained the unit clarification petition, this court should ignore the error and proceed to a review of the merits of the accretion issue. The Union reasons that this course of action would serve judicial economy because its petition would eventually have become timely. To disregard the Board's failure to apply its own rule, however, would be to sanction arbitrary action by the Board. Whatever the propriety of its decision on the accretion issue, the Board remains obligated to apply its precedent with reasonable consistency
 
 
 [7]
 The Regional Director also considered the Company's contention that the unit clarification petition was foreclosed by a line of Board decisions holding that such petitions will not be entertained to clarify the unit placement of job classifications that have been historically excluded from the unit by the parties. Plough, Inc., 203 NLRB 818 (1973); Lufkin Foundry & Machine Co., 174 NLRB 556 (1969). The Regional Director properly rejected this argument. A necessary predicate for historical exclusion would appear to be that the jobs in question have existed at the bargaining unit location for some time. This was not true with respect to the CSRs, who until recently had been headquartered in Chicago. Under these circumstances, the Union cannot be said to have acquiesced in the exclusion of the CSRs from the unit, for the CSRs were never present at the facility with respect to which the parties had negotiated. We thus agree with the Regional Director that the CSRs occupy jobs that are analogous to newly created positions and hence were not historically excluded from the unit
 
 
 [8]
 The Board has entertained unit clarification petitions filed 90 days, Beth Israel Medical Center, 229 NLRB 295 (1977), and 101 days, Shop Rite Foods, Inc., 247 NLRB No. 143 (1980), before expiration of the current labor contract. In the instant case, the Union's petition was filed on November 30, 1979, approximately 180 days before the expiration of the existing collective bargaining agreement
 
 
 [9]
 See note 7, supra
 
 
 [10]
 In at least two cases, the Board has considered situations in which the job classifications sought to be clarified were created after execution of the contract. Neither supports the argument of the Board and the Union. In International Ass'n of Machinists, 242 NLRB 44, 45-46 (1979), the Board dismissed a unit clarification petition that sought, inter alia, inclusion of several job categories created after the effective date of the existing contract. The Board examined the characteristics of the newly created jobs and concluded that they were excluded from the unit by the general unit description in the contract. In Safeway Stores, Inc., 216 NLRB 819 (1975), the Board entertained a unit clarification petition where the jobs at issue were created after execution of the contract. In that case, however, the Board added that the newly created jobs involved duties beyond those performed by the job categories included in the unit description. Thus, the unit placement of the new jobs was not clearly defined